**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ANDREA K.,

                                    Plaintiff,

v.                                                              1:18-CV-1448
                                                                (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Andrea K.
East Greenbush, New York
Plaintiff pro se

Social Security Administration              JOHANNY SANTANA, ESQ.
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**MEMORANDUM-DECISION & ORDER[1]**

   Plaintiff pro se Andrea K.[2] brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner"

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. **Error! Main Document Only.**§ 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b),and General Order 18.  Dkt. No. 4.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

or "defendant") denying her application for supplemental security income ("SSI")
benefits.  Dkt. No. 1.  Defendant moved for judgment on the pleadings.  Dkt. No. 26.
Plaintiff has not filed written opposition to this motion and failed to appear for a court-
ordered status conference.  Dkt. No. 27.  For the reasons set forth below, the
Commissioner's motion is granted.

## I.    Background[3]

Plaintiff was born December 12, 1974, and is a college graduate who also
obtained a Master's Degree in Business Administration.  T. 159, 304.  At the time of her
administrative hearing, plaintiff lived alone while her daughter was away at college.  Id.
at 158.  On August 26, 2015, plaintiff filed an application for SSI, alleging disability
beginning on June 1, 2006.  Id. at 291-292, 299.  Her claim was denied initially on
January 7, 2016.  Id. at 217-222.  Plaintiff requested a hearing, and a hearing was held
on October 13, 2017, before Administrative Law Judge ("ALJ") Brian LeCours.  Id. at
144-208.  Plaintiff appeared pro se at the hearing, where the ALJ heard her testimony,
along with the testimony of Vocational Expert ("VE") Connie Standhart.  Id.  On
February 28, 2018, the ALJ rendered an unfavorable decision.  Id. at 9-24.  On
November 19, 2018, the Appeals Council denied plaintiff's request for review, making
the ALJ findings the final determination of the Commissioner.  Id. at 1-6.  Plaintiff
commenced this action on December 17, 2018.  See Dkt. No. 1.

---

[3]  References to the administrative transcript will be cited as "T"**Error! Main Document Only.** and page
citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All
other citations to documents will be to the pagination generated by the Court's electronic filing system,
CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the
original documents.

## II.   Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review  . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (citations omitted)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the

ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).


## C.  ALJ Decision

In his February 28, 2018, decision, the ALJ applied the five-step disability sequential evaluation. First, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 25, 2015, the date of her SSI application. T. at

14.  The ALJ found at step two that plaintiff had the severe impairments of lumbar degenerative disc disease, migraine headaches, diabetic neuropathy, obesity, asthma, and chronic diarrhea.  Id. at 14-15.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 15.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. § 416.967(a).  Id. at 15-18.  Specifically, the ALJ found that plaintiff can occasionally operate pedal controls bilaterally; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, and scaffolds; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases; must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery (not including automotive machinery); and requires a cane to ambulate over uneven surfaces or for periods longer than fifteen minutes  Id. at 15-16.  At step four, the ALJ determined that plaintiff had no past relevant work.  Id. at 19.  Considering plaintiff's RFC, age, education, and work experience, along with testimony from the VE, the ALJ determined that plaintiff could perform the requirements of representative occupations which exist in significant numbers in the national economy, such as office helper or document preparer.  Id. at 19-20.  Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, since August 25, 2015, the date the application was filed."  Id. at 20.

### D.  Arguments

Defendant, the only moving party, argues that the ALJ adequately developed the administrative record.  Dkt. No. 26 at 13-16.  The Commissioner further argues that the ALJ's RFC determination and his ultimate determination of disability was supported by substantial evidence.  Id. at 13-20.

Plaintiff did not file a brief or other papers responsive to defendant's motion, despite being given more than one opportunity.  Dkt. No. 14, 20.  Plaintiff also failed to appear at a court-ordered status conference prior to the final extension of her deadline to file a brief.  Dkt. No. 23, 27.[4]  It is well settled that a plaintiff bears the burden of establishing disability.  See Melville v. Apfel, 198 F.3d 45, 51 (2d Cir.1999); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983).  In the Northern District of New York, General Order No. 18 notifies parties of the consequences of failing to file a brief in connection with a social security action: "A party's brief may be its only opportunity to set forth arguments that entitle the party to a judgment in its favor.  The failure to file a brief by either party may result in the consideration of the record without the benefit of the party's arguments."  N.D.N.Y. General Order No. 18 at 6.

"In a case such as this, where Plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants."  Hubbard v. Comm'r of Soc. Sec., No. 6:14-CV-1401 (GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016).  As such,

---

[4]  In a letter received and filed with the Court on February 24, 2020, plaintiff noted that she did not receive notice of the Court's February 14, 2020, status conference until February 18, 2020, which is why she was not present at the status conference.  Dkt. No. 27.  The Court sent plaintiff notice of the February 14, 2020 status conference by e-mail and regular mail on February 11, 2020.  Dkt. No. 23.

despite plaintiff's failure to file a brief, the Court may "examine[ ] the record to determine whether the ALJ applied the correct legal standard and reached a decision based on substantial evidence." Id. (citing Gregorka v. Comm'r of Soc. Sec., No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015)).  Thus, despite plaintiff's failure to file a brief, this Court will examine the record to consider whether the ALJ applied the proper standards and reached a decision that is based on substantial evidence. Id.  In doing so, the Court recognizes that plaintiff challenged the ALJ's development of the record in her request for review by the Appeals Council.  T. 270-288.  Therefore, the Court will address that issue and plaintiff's *pro se* status, in addition to the typical review of the ALJ's application of the five-step disability evaluation.

### E.  Analysis

### 1.  Development of Record

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record.  "[T]he Commissioner of Social Security ... shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B); see also Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record").  An ALJ's failure to comply with this mandate is legal error. Rose v. Comm'r of Soc. Sec., 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).  However, the ALJ's duty to develop the record is not unlimited and is satisfied "where the ALJ . . . possesses [the claimant's] complete medical history" and there are no "obvious gaps in the

administrative record. " Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal

quotation marks omitted) (quoting Perez, 77 F.3d at 48).

The duty to develop the record is "heightened" when a claimant "waives [her]

right to counsel and proceeds *pro se*."  Moran v. Astrue, 569 F.3d 108, 113 (2d Cir.

2009) (internal quotation marks omitted) (quoting Cruz v. Sullivan, 912 F.2d 8, 11 (2d

Cir. 1990) (citations omitted)).  This is because the ALJ "must adequately protect" the

rights of a *pro se* claimant.  Id.  The ALJ's heightened duty requires him to "scrupulously

and conscientiously probe into, inquire of, and explore for all the relevant facts."

Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)

(quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (internal quotation

marks omitted) (citations omitted)); see also Morris v. Berryhill, 721 F. App'x 25, 27 (2d

Cir. 2018) (summary order) ("When a disability benefits claimant appears *pro se*, the

ALJ must 'ensur[e] that all of the relevant facts are sufficiently developed and

considered.'") (quoting Cruz, 912 F.2d at 11).  On appeal, the district court must

undertake a "searching investigation of the record" to ensure that the rights of the *pro se*

claimant were protected.  Cruz, 912 F.2d at 11 (quoting Gold v. Sec'y of Health, Ed., &

Welfare, 463 F.2d 38, 43 (2d Cir. 1972) (internal quotation marks omitted) (citations

omitted)).  Moreover, where a claimant is pro se and alleging mental impairments,

courts have concluded that the ALJ bears a "doubly heightened" duty to develop the

record.  Estrella v. Berryhill, No. 15 CV 6966 (CS)(LMS), 2017 WL 2693722, at *21

(S.D.N.Y. June 22, 2017) (citing Corporan v. Comm'r of Soc. Sec., No. 12-Civ-6704

(JPO)(SN), 2015 WL 321832, at *6 n.7 (S.D.N.Y. Jan. 23, 2015)).

In this case, the ALJ satisfied his heightened obligation to develop the record on behalf of the pro se Plaintiff.  At the commencement of the hearing, the ALJ confirmed that plaintiff had received a copy of the administrative record prior to the hearing.  T. 151.  Upon learning that plaintiff may not have had an opportunity to review the file due to computer issues at the hearing location, the ALJ offered to postpone the hearing to provide plaintiff an opportunity to fully review the documents.  Id.  Plaintiff declined.  Id.  The ALJ encouraged plaintiff to review her full file after the hearing, and advised her to seek the assistance of facility staff to ensure that she could access the computer files.  Id. at 152.  The ALJ then summarized the full contents of the administrative record and noted portions of the medical record that plaintiff had provided directly to the Commissioner.[5]  Id. at 152-157.  Finally, the ALJ explained to plaintiff that she had an opportunity to object in writing prior to closure of the record.  Id. at 157.  The record before this Court includes plaintiff's correspondence indicating that she had reviewed the case file after the hearing, and did not object to any evidence in the file.  Id. at 354.

After the October 13, 2017 hearing, the ALJ obtained additional evidence from one of plaintiff's treatment providers, which he proffered for plaintiff's review and response on October 31, 2017; November 15, 2017; and December 20, 2017.  T. 355-356.  On November 8, 2017, plaintiff returned the ALJ's October 31, 2017 correspondence with a handwritten notation indicating that she had no objections to the additional documents being added to the record.  Id. at 358.  The ALJ also proffered

---

[5]  The record shows that the state agency made multiple attempts to obtain updated medical records from plaintiff and her treatment providers prior to their January 5, 2016 initial denial of plaintiff's application for benefits.  T. 755, 759, 764, 767-768, 771, 795-798.  The state agency also twice scheduled plaintiff for a consultative physical examination.  T. 753, 759, 764.  Plaintiff failed to attend either appointment.  T. 753-754.

additional evidence from two other treatment providers on November 15, 2017 and December 20, 2017.  Id. at 359-362.  On December 25, 2017, plaintiff returned the ALJ's December 20, 2017 correspondence with a handwritten notation that she was enclosing additional documentation related to her diabetes.  Id. at 364-367.  This notation did not reference any objection to the new material proffered by the ALJ.  Id. Therefore, this Court finds that the ALJ met his heightened obligation to develop the administrative record, and there are no grounds for remand related to this issue.

### 2.  Plaintiff's Right to Counsel

Although a claimant does not have a constitutional right to counsel at a Social Security disability hearing, she does have a statutory and regulatory right to be represented if she chooses to obtain counsel.  42 U.S.C. § 406; 20 C.F.R. § 404.1705. The applicable statute and regulations state that, when notifying a claimant of an adverse determination, the Commissioner of Social Security must "notify [the] claimant in writing" of (1) her "options for obtaining [an] attorney[ ] to represent [her]" at her hearing, and (2) "the availability . . . of . . . organizations which provide legal services free of charge" to "qualifying claimants."  42 U.S.C. §§ 406(c), 1383(d)(2)(D); see also 20 C.F.R. § 404.1706; see also Drake v. Comm'r of Soc. Sec., No. 8:08-CV-1007, 2010 WL 11526780, at *4-5 (N.D.N.Y. Dec. 20, 2010).  If properly informed of this right, a claimant may waive it.  Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507-508 (2d Cir. 2009).

Before her October 13, 2017 hearing, the Commissioner advised plaintiff in writing of her right to an attorney or other representative and included a list of organizations that provide low- or no-cost legal services to qualified individuals.  T. 232-

237.  At her hearing, the ALJ verbally reminded plaintiff of her right to representation and summarized the type of assistance such a representative could provide, including gathering evidence and questioning witnesses such as the VE.  Id. at 147.  He also explained that an attorney may be able to represent plaintiff on a contingent fee basis, or plaintiff may qualify for no-cost legal services.  Id.  The ALJ offered to postpone the hearing to a later date if plaintiff wished to pursue potential representation.  Id. at 147-148.  Plaintiff informed the ALJ that she wished to proceed without representation.  Id. at 149-150.  Prior to obtaining plaintiff's written waiver of her right to counsel, the ALJ confirmed that plaintiff had contacted legal aid organizations regarding potential representation.  Id. at 149.  The record includes plaintiff's signed waiver form.  Id. at 267.

There is no indication in the record that plaintiff failed to understand her right to representation or that plaintiff was coerced into signing the waiver.  Therefore, the Court is satisfied that there are no grounds for remand due to Plaintiff's decision to represent herself at her administrative hearing.

### 3.  Severe Impairments

At step two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, 07-CV-

10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-

(5)).

> Although the Second Circuit has held that this step is limited to "screening
> out *de minimis* claims" . . . the "mere presence of a disease or impairment,
> or establishing that a person has been diagnosed or treated for a disease
> or impairment" is not, by itself, sufficient to render a condition severe.

Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.

1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant

retains the burden of presenting evidence to establish severity.  Id. (citing Miller v.

Comm'r of Soc. Sec., 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16,

2008)).

This Court has indicated the failure to find a specific impairment severe at Step

Two is harmless where the ALJ concludes (1) there is at least one other severe

impairment, (2) the ALJ continues with the sequential evaluation, and (3) the ALJ

provides an explanation showing he adequately considered the evidence related to the

impairment that is ultimately found non-severe.  Fuimo v. Colvin, 948 F. Supp. 2d 260,

269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, 09-CV-0236, 2010 WL 3909630

(N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906

(N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d

Cir. 2013) (summary order) (finding that any error in failing to find the plaintiff's anxiety

and panic disorder severe at step two would be harmless because the ALJ found other

severe impairments present, continued through the sequential evaluation process, and

specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found Plaintiff's lumbar degenerative disc disease, migraine

headaches, diabetic neuropathy, obesity, asthma, and chronic diarrhea to be severe

impairments. T. at 14.  The ALJ also considered plaintiff's diagnosed hypertension, hyperlipidemia, pituitary mass lesion, and incontinence, but concluded that these did not rise to the level of severe impairments because there was not substantial evidence that these additional impairments "caused more than minimal work-related limitations for at least 12 consecutive months" during the relevant time period.  Id. at 14-15.  Citing plaintiff's medical records, the ALJ found that plaintiff's hypertension and hyperlipidemia were well-controlled with medication.  Id. at 14-15, 549.  He also relied upon reports from plaintiff's neurologist that her pituitary mass lesion was not causing any significant hormonal dysfunction and should be kept under observation.  Id. at 15, 701, 707, 709, 720.  Finally, the ALJ found record evidence that plaintiff had been prescribed medication for incontinence, but no indication that she had required evaluation or treatment by a specialist.  Id. at 15, 550.

"The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  Bergeron v. Astrue, No. 09–CV–1219 (MAD), 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting McConnell v. Astrue, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  "The severity of an impairment is not determined merely by diagnosis, but by the limitations imposed by the impairment."  Tillis v. Colvin, 1:14-CV-962, 2016 WL 8674672, at *2 (N.D.N.Y. Mar. 11, 2016) (citations omitted).

Accordingly, the ALJ's analysis at step two provides sufficient explanation indicating that he adequately considered the evidence related to Plaintiff's alleged impairments, including those he did not find to be severe. T. at 14-15; Fuimo, 948 F.

Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798.  Therefore, the ALJ had

substantial evidence to support his conclusions at step two.  In the alternative, the Court

finds that any error by the ALJ at this step would be harmless because he did find other

impairments severe, continued with the sequential evaluation, and provided adequate

explanation in his decision showing he properly considered the evidence related to

Plaintiff's various impairments. Id.

Accordingly, for the reasons above, the ALJ's findings regarding Plaintiff's

impairments at Step Two are supported by substantial evidence, and remand is not

required on this basis.

### 4.  Listings Analysis

"Plaintiff has the burden of proof at step three to show that her impairments meet

or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y.

2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To

meet a Listing, Plaintiff must show that her medically determinable impairment satisfies

all of the specified criteria in a Listing."  Rockwood, 614 F. Supp. 2d at 272.  "If a

claimant's impairment 'manifests only some of those criteria, no matter how severely,'

such impairment does not qualify."  Rockwood, 614 F. Supp. 2d at 272 (quoting Sullivan

v. Zebley, 493 U.S. 521, 530 (1990)).  Additionally, a court may uphold an ALJ's finding

that a claimant does not meet a Listing even where the decision lacks an express

rationale for that finding if the determination is supported by substantial evidence.  See

Rockwood, 614 F. Supp. 2d at 273 (citing Berry, 675 F.2d at 468).

Here, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment,

considering in particular Listing 1.04 (spinal disorders), Listing 3.03 (asthma), Listing

5.00 (digestive system), Listing 9.00(B)(5) (diabetes mellitus and other pancreatic gland

disorders), Listing 11.00 (neurological), and Listing 12.00 (mental disorders).  T. 15.

The ALJ reached this decision despite a September 20, 2017 opinion from plaintiff's

treating physician, Dr. Charles Buttaci, that plaintiff satisfied the requirements of Listing

1.04, Paragraph C.  T. 17, 667.

Listing 1.04 encompasses spinal disorders resulting in compromise of the nerve

root or spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy
> with associated muscle weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine);or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report
> of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need
> for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication[6], established by
> findings on appropriate medically acceptable imaging, manifested by
> chronic nonradicular pain and weakness, and resulting in inability to
> ambulate effectively...

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

The ALJ reviewed plaintiff's medical records and found no evidence that

plaintiff's lumbar spine impairments included any of the symptoms set out in paragraphs

(A) through (C).  T. at 15. Due to this lack of supporting evidence, the ALJ assigned

---

[6] Pseudoclaudication is a neurological condition causing leg pain as a result of pressure on the nerve roots from a narrowing of the spinal canal in the lower back.  *Available at*: https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/expert-answers/pseudoclaudication/faq-20057779?_ga=2.21813371.153651759.1614609238-232189668.1614609238 (*last visited* March 23, 2021).

"little weight" to Dr. Buttaci's opinion that plaintiff met the criteria for Listing 1.04.  In reaching this conclusion, the ALJ cited imaging reports that described no significant nerve root compromise or severe stenosis, and Dr. Buttaci's treatment notes that gave no indication of weakness or pseudoclaudication that affected plaintiff's ability to walk. Id. at 17, 675, 677-678.  The ALJ specifically relied upon Dr. Buttaci's September 2017 examination notes, prepared contemporaneous with his medical opinion, that showed full strength in plaintiff's lower extremities and a normal gait.  Id. at 17, 674-675.

To satisfy the criteria under Listing 3.03, plaintiff must have chronic asthmatic bronchitis or attacks that require physician intervention occurring at least once every two months in spite of prescribed treatment.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, Sec. 3.03.  The ALJ found no evidence in the record that plaintiff's asthma rose to the level of the Listing, and cited treatment notes showing that her condition was generally controlled by medication.  T. at 15, 549.

To qualify as a Listed Impairment, the various gastrointestinal disorders that fall under Listing 5.00 must manifest certain serious complications such as hemorrhaging, obstruction, or significant involuntary weight loss.  See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 5.02, 5.06, 5.08.  The ALJ found no evidence that plaintiff experienced any of these complications, noting that her gastrointestinal symptoms were described as under control with medication and fiber supplements.  T. at 18, 584, 586.

The ALJ considered Listings 9.05(b)(5) and 11.00 when addressing plaintiff's diabetes mellitus and associated neuropathy.  To qualify under Listing 9.05(b)(5), the diabetes must result in long term complications such as diabetic ketoacidosis, chronic hyperglycemia, or hypoglycemia.  Applying this criterion, the ALJ found that plaintiff had

never required specialized treatment by an endocrinologist, and there was no evidence of significant diabetic complications in her medical record.  T. at 18.  Peripheral and sensory neuropathies associated with diabetes are appropriately evaluated under Listing 11.00.  See Melo v. Berryhill, No. 17 Civ. 4716 (AJP), 2018 WL 847011, at *19 (S.D.N.Y. Feb. 13, 2008).  The ALJ considered this Listing as well, in light of plaintiff's diagnosed neuropathy that was treated with prescription medication.  T. at 15, 548-549, 688-690.  However, despite plaintiff's use of a cane, there was no evidence of the requisite "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.04(B).  Therefore, the ALJ concluded that plaintiff's diabetes did not satisfy the criteria for Listing 11.00.

The ALJ also considered whether plaintiff's migraines met Listing 11.00 and 12.00.  To satisfy the neurological listing, migraine headaches must occur at least once a week for at least three consecutive months despite compliance with treatment.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.  The ALJ noted that plaintiff had received intermittent treatment for migraines, and that there was nothing related to migraines in the medical record after May 12, 2014.  T. at 18, 707-716, 719-721, 725-738.  This neurology report, which predated plaintiff's current application for benefits by more than a year, describes "some improvement" in plaintiff's headaches after she reduced her caffeine intake.  Id. at 18, 736.  The ALJ did not provide an express

---

[7]  Headache disorders such as migraines are not an individually Listed Impairment, but the Commissioner considers Epilepsy (Listing 11.02) to be the most closely analogous Listed Impairment.  See Tatiana A v. Saul, No. 2:19-CV-349 (MKD), 2020 WL 2858478, at *8 (E.D. Wash. June 2, 2020) (summarizing policy); see also S.S.R. 19-4P, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 84 FR 44667-01 at 44671, 2019 WL 4169635, at *7 (Aug. 26, 2019).

rationale for considering Listing 12.00 in connection with plaintiff's migraines, but stated that he found no evidence of mental limitations in the record.  Id. at 15, 18.

After considering these specific Listings, the ALJ considered Plaintiff's obesity in conjunction with Social Security Rulings ("S.S.R.") 00-3p and 02-01p and found that, even with this consideration, the evidence failed to establish Plaintiff's impairments or combination of impairments met or medically equaled the requirements of any Listed Impairment.  T. at 15.  Accordingly, the ALJ's thorough analysis of Plaintiff's impairments at Step Three indicate sufficient consideration of these impairments in relation to the Listings. For the reasons set forth above, the ALJ's findings regarding Plaintiff's impairments at Step Three are supported by substantial evidence. As such, remand is not required on this basis.

### 5.  RFC Determination

RFC is defined as "'what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,

2012) (quoting S.S.R. 85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)).

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole,' even if that finding does not perfectly correspond with any of the opinions of cited medical sources."  Tanya S. v. Saul, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). However, it is well established that ALJs are not medical professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare medical findings."  Id. (internal quotation marks and citation omitted) (quoting Ortiz v. Colvin, 298 F. Supp 3d 581, 586 (W.D.N.Y. 2018)); see Charland v. Comm'r of Soc. Sec., No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence.").  "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof."  Tanya, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)).  This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch."  Walters v. Astrue, No. 11-

CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§
404.1513(a)(2)(i), 404.1569a(a).  "The claimant's RFC can be expressed in terms of the
exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the
function-by-function analysis has been completed."  Knighton, 861 F. Supp. 2d at 66;
(citing Hogan v. Astrue, 491 F. Supp. 2d 347, 354 (W.D.N.Y 2007)); see Walters, 2013
WL 598331, at *3 ("Once the function-by-function analysis is completed, the RFC may
be expressed in terms of exertional levels of work, e.g., sedentary, light, medium,
heavy, and very heavy.").

     As stated, the ALJ determined that plaintiff had the RFC to "perform sedentary
work as defined in 20 CFR 416.967(a) except" that plaintiff

> could occasionally operate pedal controls . . . occasionally balance, stoop,
> kneel, crouch, crawl, and climb ramps and stairs, but is never able to climb
> ladders, ropes and scaffolds; she must avoid concentrated exposure to
> hazardous conditions such as unprotected heights and dangerous
> machinery . . . [and] requires a cane to ambulate over uneven surfaces
> and for prolonged ambulation.

T. at 15-16.

> "Sedentary work" is defined as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools. Although a
> sedentary job is defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job duties. Jobs
> are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. § 404.1567(a).  S.S.R. 96-9p explains that, with respect to sedentary work,

> "Occasionally" means occurring from very little up to one third of the time,
> and would generally total no more than about 2 hours of an 8-hour
> workday. Sitting would generally total about 6 hours of an 8-hour workday.
> Unskilled sedentary work also involves other activities, classified as
> "nonexertional," such as capacities for seeing, manipulation, and
> understanding, remembering, and carrying out simple instructions.

1996 WL 374185, at *3 (S.S.A. July 2, 1996); see Knighton, 861 F. Supp. 2d at 67

("Sedentary work also generally involves up to two hours of standing or walking and six

hours of sitting in an eight-hour workday.'" (quoting Perez, 77 F.3d at 46).  Moreover, it

has been held that "'the concept of sedentary work contemplates substantial sitting . . .

[and] alternating between sitting and standing may not be within the concept of

sedentary work.'"  Tanya S, 410 F. Supp. 3d at 446 (quoting Ferraris, 728 F.2d at 587

(additional citation omitted)).

In calculating plaintiff's RFC, the ALJ evaluated various medical opinions

prepared by plaintiff's orthopedist, Dr. Charles Buttaci, along with plaintiff's medical

records and her hearing testimony, as discussed below.

### a.  Treating Physician Opinions from Dr. Charles Buttaci

On July 27, 2015, Dr. Buttaci completed a medical opinion form entitled "Medical

Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug

Addiction Determination" that focused on the functional limitations associated with

plaintiff's back pain.  T. at 428-429.  Dr. Buttaci noted that his most recent examination

of plaintiff took place on April 30, 2015.  Id. at 429.  He gave plaintiff a "poor" prognosis

for her diagnosed conditions of ongoing right periscapular pain; myofascial pain;

cervical sprain; thoracic spinal stenosis; sciatica; and spondylosis/low back pain.  Id. at

428.  Completing a check-box form describing plaintiff's functional limitations, Dr.

Buttaci opined that plaintiff was "moderately limited" in her ability to walk, stand, sit, and

climb stairs.  Id. at 429.  He opined that she was "very limited" in her ability to lift and

carry, and her ability to push, pull, and bend.  Id.  He found no limitations in plaintiff's

ability to see, hear, or speak, or in the use of her hands.  Id.  With regard to mental

limitations, Dr. Buttaci opined that plaintiff was "very limited" in her ability "to function in a work setting at a consistent pace."  Id.   The ALJ assigned "significant weight" to Dr. Buttaci's July 27, 2015 opinion because it was consistent with his treatment notes that reflected episodic symptoms and good results with conservative treatment.  T. 18, 370, 673.  He discounted Dr. Buttacci's opinion regarding plaintiff's mental functioning, because he had only treated plaintiff's physical impairments.  Id. at 18.

On May 4, 2017, Dr. Buttaci completed an updated Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form.  T. 511-512.  At the time, his most recent examination of plaintiff had taken place on January 16, 2016.  Id. at 512.  He again listed plaintiff's impairments as  ongoing right periscapular pain; myofascial pain; cervical sprain; thoracic spinal stenosis; sciatica; and spondylosis/low back pain, assigning each a poor prognosis.  Id. at 511.  He offered a more restrictive opinion of plaintiff's functional limitations.  Id. at 512.  In Dr. Buttaci's opinion, plaintiff was "very limited" in her ability to walk, stand, sit, lift/carry, push/pull/bend, and climb stairs.  Id.  He opined that plaintiff had no limitations in her ability to see, hear, speak, or in the use of her hands.  Id.  With regard to mental limitations, Dr. Buttaci again opined that plaintiff was "very limited" in her ability to function in a work setting at a consistent pace.  Id.

Dr. Buttaci also provided an updated Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form on September 27, 2017.  T. 527-528.  As set out on the form, he had still not examined plaintiff since January 18, 2016.  Id. at 528.  Dr. Buttaci offered a slight change to the description of plaintiff's impairments, listing ongoing right and left periscapular pain;

myofascial pain; cervical sprain; thoracic spinal stenosis; sciatica; spondylosis/low back

pain; and lumbar sprain. Id. at 527. His opinion regarding plaintiff's physical functional

limitations was unchanged from May 2017, and he again described her as "very limited"

with regard to her ability to walk, stand, sit, lift/carry, push/pull/bend, and climb stairs.

Id. at 528. He again opined that plaintiff had no limitations in seeing, hearing, speaking,

or the use of her hands. Id. With respect to mental functioning, Dr. Buttaci opined that

plaintiff was very limited in her ability to function in a work setting at a consistent pace.

Id.

The ALJ assigned "little weight" to Dr. Buttaci's May 2017 and September 2017

opinions because they were inconsistent with plaintiff's most recent physical

examinations. T. 17. The ALJ cited Dr. Buttaci's January 2016 treatment note that

plaintiff's back pain flared up about once per year and typically responded well to

physical therapy. Id. at 17, 673. The ALJ also considered Dr. Buttaci's examination

report dated September 27, 2017, the same date as his most recent medical opinion. In

that report, Dr. Buttaci reported that plaintiff had full strength in her lower limbs, and

demonstrated a normal gait pattern with no severe loss of balance or footdrop. Id. at

674-675. He examined plaintiff's back and found mild tenderness across the lumbar

paraspinals, will mild limitation on her lumbar range of motion. Id. at 675. Dr. Buttaci

ordered a refill of plaintiff's existing prescription pain medication, and noted that plaintiff

"takes it very sparingly just a few times a week." Id. The orthopedist did not consider

injections necessary "while [her] symptoms are manageable." Id.

The Second Circuit has long recognized the "treating physician rule" set forth in

20 C.F.R. § 416.927(c), which provides that "'the opinion of a claimant's treating

physician as to the nature and severity of the impairment is given 'controlling weight' so

long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the case

record.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue,

537 F.3d 117, 128 (2d Cir. 2008)); see Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir.

2004) ("[T]he opinion of the treating physician is not afforded controlling weight where

. . . the treating physician issued opinions that are not consistent with other substantial

evidence in the record . . . .").[8]

Before a treating physician's opinion can be discounted, the ALJ must provide

"good reasons." Schaal v. Apfel, 134 F.3d 496, 503, 505 (2d Cir. 1998); see 20 C.F.R.

§§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ does not give a treating physician's

opinion controlling weight, the Social Security Administration regulations require the ALJ

to "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy],

length, nature, and extent of treatment; (2) the amount of medical evidence supporting

the opinion; (3) the consistency of the opinion with the remaining medical evidence; and

(4) whether the physician is a specialist."  Selian v. Astrue, 708 F.3d 409, 418 (2d Cir.

2013) (per curiam) (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).

In the recent Second Circuit case, Estrella v. Berryhill, the Court addressed an ALJ's

failure to "explicitly apply" the "nonexclusive list" of regulatory factors set forth in

Burgess when assigning less than full weight to a treating physician's opinion.  Estrella,

---

[8]  For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do
"not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."
20 C.F.R. § 416.920c(a).  But since Plaintiff filed her claim on August 25, 2015, the treating physician rule
applies.  See Claudio v. Berryhill, No. 3:17-CV-1228 (MPS), 2018 WL 3455409 at *3 n.2 (D. Conn. July
18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule
under the earlier regulations.").

925 F.3d 90, 95-96 (2d Cir. 2019) (internal quotation marks omitted) (citing Selian, 708 F.3d at 419-20).  The Second Circuit made clear that, "[a]n ALJ's failure to 'explicitly' apply the <u>Burgess</u> factors when assigning weight . . . is a procedural error," <u>Id.</u> at 96 (quoting <u>Selian</u>, 708 F.3d at 419-20), and that remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]' " <u>Id.</u> (quoting <u>Halloran</u>, 362 F.3d at 32).  The Court further clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' [the court] will affirm." <u>Id.</u> (quoting <u>Halloran</u>, 362 F.3d at 32).  The Court explained that, where an ALJ procedurally errs by failing to "explicitly consider" the <u>Burgess</u> factors, the question of "whether 'a searching review of the record ... assure[s the court] that the substance of the [treating physician] rule was not traversed'" is resolved by determining "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating physician's] opinion."  <u>Id.</u>  As recently as 2020, the Second Circuit in <u>Ferraro v. Saul</u>, 806 F. App'x 13 (2d Cir. 2020) (summary order), quoting from <u>Estrella</u>, reiterated the foregoing rationale. See <u>Ferraro</u>, 806 F. App'x at 14-15.

The Court concludes that the ALJ's assessment of Dr. Buttaci's multiple opinions complies with the treating physician rule and is supported by substantial evidence.  The ALJ considered three separate opinions from plaintiff's treating orthopedist as part of his RFC determination[9], and assigned the greatest weight to those portions of the opinions

---

[9]  As discussed above, the ALJ also considered Dr. Buttaci's September 27, 2017 opinion that plaintiff's back impairment satisfied the criteria of Listing 1.04. T. 15.  Dr. Buttaci also prepared a January 2016 opinion that described the identical functional limitations as his May 2017 and September 2017 opinions. T. 508-509.  Because the ALJ's analysis would likewise be identical, his failure to expressly reference the January 2016 opinion is harmless error.   See <u>Camarata v. Colvin</u>, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying request for remand because application of the correct legal standard would not change the outcome).

that were consistent with the record evidence.  See Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing Stevens v. Barnhart, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

In applying the treating physician rule, the ALJ recognized Dr. Buttaci's relationship with plaintiff, but also factored in the significant gaps between treatment visits.  For example, Dr. Buttaci's records reflect treatment only when plaintiff's back pain flared up, approximately once per year, and his July 2017 opinion concedes that he had not examined plaintiff in over a year.  T. 528, 673.  The ALJ contrasted Dr. Buttaci's more recent opinions that plaintiff's back pain caused extreme limitations for extended periods with contemporaneous treatment notes describing "manageable" symptoms that could be treated with physical therapy and infrequent use of pain medication.  Id. at 675.  The ALJ also appropriately factored in Dr. Buttaci's specialization in orthopedics into his evaluation of the opinion evidence.  He discounted those portions of the opinion that addressed plaintiff's mental functioning, which fell outside the scope of his treatment of plaintiff.  Zongos v. Colvin, 5:12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25,

2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

In evaluating the medical evidence, the ALJ assigned the greatest weight to Dr. Buttaci's July 2015 opinion, though the document was dated almost one month before plaintiff applied for SSI.  T. 17-18, 291-292.  This choice does not affect the validity of the ALJ's determination.  Although the timing of a treating physician's report is plainly relevant to the ALJ's assessment of weight he or she will assign to the treating physician, a treating physician's opinion need not be rejected solely because it predates the relevant time period.  See Mura v. Colvin, No. 16-CV-6159P, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017)  see also Burdick v. Colvin, No. No. 2:14-CV-133, 2015 WL 8352320, *7 (D. Vt. November 17, 2015) ("[a]lthough [the treating physicians] treated [plaintiff] prior to the application date . . . , their treatment notes and opinions are relevant to [plaintiff's] condition during the alleged disability period and to the issue of whether [another opinion is] consistent with other medical evidence of record.").  Here, the July 2015 opinion predates the relevant time period by less than one month. Further, the ALJ adequately supported his determination by noting the similarities between Dr. Buttaci's July 2015 opinion and his September 2017 examination report.  T. 16-18.  He thus provided good reasons for the weight assigned to the various treating physician opinions.

### b.  Plaintiff's Medical Records

The ALJ also relied on plaintiff's treatment history to determine her RFC.  With respect to plaintiff's migraines, the ALJ noted that there was no record that plaintiff had seen a neurologist after her application date.  T. 18.  The most recent neurology

treatment notes, dated May 12, 2014, report "some improvement" in plaintiff's headaches after she reduced her caffeine intake.  Id. at 18, 736.  The neurologist also noted that plaintiff's most recent MRI showed no evidence of masses or cysts.  Id. at 738.   The ALJ also relied on treatment notes from plaintiff's primary care provider that depict plaintiff's asthma, diabetes, and chronic diarrhea as controlled by medication.  Id. at 549, 584.  The ALJ also noted that plaintiff's physician was optimistic in January 2017 that her gastrointestinal issues could be resolved with changes in her diet and exercise.  Id. at 586.

### c.  Plaintiff's Hearing Testimony

In addition to the medical evidence, the ALJ must take the plaintiff's reports of pain and other symptoms into account when evaluating a plaintiff's RFC.  Genier, 606 F.3d at 49.  The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" Del Carmen Fernandez v. Berryhill, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); S.S.R. 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).  The ALJ's RFC determination did so by incorporating those portions of plaintiff's testimony that were supported by other record evidence.  For example, plaintiff testified that she had been prescribed a cane for the past several years due to diabetic neuropathy and primarily used it when walking outside her home. T. 18, 196-197.  The ALJ found this testimony consistent with examination results showing reduced sensation in both feet.  Id. at 549.  In his RFC determination, the ALJ

limited plaintiff to work that allowed her to use a cane for ambulation over uneven surfaces and when walking for longer than fifteen minutes.  Id. at 15-16.

By contrast, the ALJ found no support for plaintiff's testimony that her back and leg pain limited her to walking at a very slow pace for no more than thirty minutes, standing for approximately fifteen minutes at a time, and sitting in one position for no more than twenty minutes.  T. 177-178, 189-190.  In determining that plaintiff had less restrictive limitations in these areas, the ALJ cited plaintiff's minimal treatment history, her successful use of physical therapy when back pain flared, and her physicians' consistent recommendations that she engage in strenuous physical exercise, including daily walks with short bursts of running or jogging, sit-ups, push-ups, and planks. Id. at 455, 586, 619.  In doing so, the ALJ discounted plaintiff's testimony but did not wholly disregard the testimony.  His RFC determination limited plaintiff to sedentary work that required no more than two hours of walking or standing over the course of the workday.  Id. at 15-16.

It within is the province of the ALJ to resolve genuine conflicts in the record. Veino, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony."  Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony by assigning the greatest weight to evidence that he deemed most consistent with plaintiff's overall treatment record and reported activities.  In making this assessment, the ALJ appropriately evaluated the conflicting medical evidence and plaintiff's testimony, and made an RFC finding that was consistent with the overall

record.  See Matta, 508 F. App'x. at 56 (concluding that, although the ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, the ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).  In light of the ALJ's analysis, this Court concludes that his RFC determination was supported by substantial evidence, as summarized above.  Therefore, this Court will not disturb the ALJ's RFC determination. Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

### 6.  Step Five

At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform."  McIntyre, 758 F.3d at 150 (quoting Brault, 683 F.3d at 445).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations.  See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the claimant's limitations. Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts,

the hypothetical is proper.  Id. at 276-77.  VE Standhart's hearing testimony included a response to a hypothetical question based upon plaintiff's RFC.  T. at 200-202. Because this Court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Standhart was proper, and his Step Five determination was supported by substantial evidence.

   Based on the foregoing, the Court concludes that the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 404.1520(g).


### III.    Conclusion


   **WHEREFORE**, for the reasons stated herein, it is hereby

   **ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

   **ORDERED**, that the Commissioner's motion (Dkt. No. 26) is **GRANTED**; and is further

   **ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

   **IT IS SO ORDERED**.


Dated: March 31, 2021
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge